## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DAYEA KIM,

      Plaintiff,

v.                                                                 Case No. 3:23-cv-441-TJC-JBT

PGA TOUR,

      Defendant.

_____

PATRICK NEALIS,

      Plaintiff,

                                          Case No. 3:23-cv-623-TJC-MCR

v.

PGA TOUR, INC.,

      Defendant.

_____

# **O R D E R**

      The cases before the Court involve two former employees of Defendant

PGA Tour, Inc. ("PGA") with similar claims related to COVID return to work

protocols implemented by PGA in the latter part of 2021. For both, PGA filed a

Motion to Dismiss.[1] (Kim Doc. 13; Nealis Doc. 14). Plaintiffs filed responses

---

[1] Each complaint has seven counts. For Kim, PGA seeks to dismiss five counts and portions of the two remaining counts. For Nealis, PGA seeks to dismiss three of seven counts.

(Kim Doc. 17; Nealis Doc. 19) and PGA replied (Kim Doc. 23; Nealis Doc. 27). The Court held an omnibus hearing on November 15, 2023, and is now ready to address the issues raised.[2]

For Kim, the Court grants the Motion in part and denies the Motion in part. The Motion is denied as to Counts I and V (failure to accommodate). Counts II, III, and VI (disparate impact and retaliation) are dismissed with prejudice for failure to exhaust administrative remedies. Counts IV and VII (disability discrimination) are dismissed without prejudice for failure to state a claim, with leave to amend.

For Nealis, the Court grants the Motion. Count II (disparate impact) is dismissed with prejudice for failure to exhaust administrative remedies. Counts IV and VII (disability discrimination) are dismissed without prejudice for failure to state a claim, with leave to amend.

## I.    BACKGROUND

Dayea Kim and Patrick Nealis are both former employees of PGA, having started their employment in 2017 and 2007, respectively. (Kim Doc. 1 ¶ 1; Nealis Doc. 1 ¶ 1). In March 2020, due to the Covid-19 pandemic, PGA required

---

[2] In evaluating a motion to dismiss, the Court will assume any non-conclusory factual allegations are true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). A motion to dismiss may be granted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

employees to work from home. (Kim Doc. 1 ¶ 29; Nealis Doc. 1 ¶ 25). Starting in May 2021, PGA encouraged employees to return to the office on a voluntary basis. (Kim Doc. 1 ¶ 31; Nealis Doc. 1 ¶ 36). In August 2021, PGA requested employees provide their vaccination status. (Kim Doc. 1 ¶¶ 35–36; Nealis Doc. 1 ¶ 33). Employees who were not vaccinated, and did not intend to get vaccinated, based on a medical or religious reason, were instructed to complete a "Covid-19 Vaccination Request for Exemption." (Kim Doc. 1 ¶ 42; Nealis Doc. 1 ¶ 40).

Kim and Nealis both requested religious exemptions. Both requests were granted, but PGA required alternate safety measures be taken, including weekly testing and masking. (Kim Doc. 1 ¶¶ 48–49; Nealis Doc. 1 ¶ 50). Both found the alternate measures burdensome and requested to continue to work from home.[3] (Kim Doc. 1 ¶ 53; Nealis Doc. 1 ¶ 50). Both requests to work from home were denied. Kim and Nealis did not comply with the requested testing and were terminated from employment. (Kim Doc. 1 ¶ 60; Nealis Doc. 1 ¶ 86). Kim was terminated on November 29, 2021. (Doc. 1 ¶ 58). Nealis was terminated on November 12, 2021. (Doc. 1 ¶ 84).

---

[3] Kim offered daily temperature testing as an alternative. (Doc. 1 ¶ 53). Nealis alleges he attempted to negotiate reasonable accommodations. (Doc. 19-1).

Approximately nine months after her termination, on August 17, 2022, Kim dual filed her charge with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"). (Doc. 1 ¶ 11; Doc. 17-2). Kim's charge indicates discrimination was based on disability and religion, but Kim did not "check the box" for retaliation and did not mention retaliation. [4] (Doc. 17-2). The charge particulars allege Kim's Christian beliefs did not allow her to take the vaccine. Id. Kim alleges PGA "discriminated against her when they denied employees work from home accommodations for religious beliefs but approved work from home accommodations for medical exemption reasons." Id. The earliest and latest dates of discrimination are both November 27, 2021, two days before Kim's termination. Id. The charge does not mention Kim's termination. See id.

Nealis dual filed his charge with the EEOC and FCHR on May 25, 2022, approximately six months after his termination. (Doc. 1 ¶ 10; Doc. 19-1). The charge alleges discrimination based on religion and retaliation. (Doc. 19-1). The charge particulars contain allegations of discrimination based on religion and retaliation and reference the Americans with Disabilities Act, but there is no

---

[4] Although both Kim and Nealis dual filed charges, the forms are different. (Compare Kim Doc. 17-2, with Nealis Doc. 19-1). For Kim, there is a box labeled "Discrimination Based On" that is otherwise blank and does not contain actual boxes to check. For Nealis, this same area is labeled "Cause of Discrimination Based On" with nine boxes that can be checked, including a box for retaliation.

mention of a disability, perceived disability, or disability discrimination; and Nealis did not check the box for disability. Id.

> Nealis's charge states the following:
>
> Among unvaccinated employees, those who submitted medical exemptions, were given an option to continue to work from home. However, [Nealis] and other religious exempted employees, were denied the same option to continue to work from home, demonstrating they were discriminated against due to their faith-based concerns over [PGA's] protocols and refusal to take the vaccination based on religious convictions. Consequently, [Nealis] was terminated from employment.

Id. The most recent date of discrimination is November 12, 2021, the day Nealis was terminated.[5] Id.

Kim and Nealis each bring the same seven claims. Counts I and V are for religious discrimination (disparate treatment based on failure to accommodate) under Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Florida Civil Rights Act of 1992 ("FCRA"), respectively.[6] Count II is for religious discrimination, disparate impact, under Title VII. Counts III and VI are for retaliation under Title VII and FCRA. Counts IV and VII allege disability

---

[5] This is another format difference between the two charges. For Nealis, the form requested a single date regarding most recent discrimination. For Kim, the form asked for both earliest and latest dates of discrimination.

[6] "FCRA claims are analyzed under the same framework as claims brought under Title VII . . . ." King v. HCA, 825 F. App'x 733, 736 n.2 (11th Cir. 2020). "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims." Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007).

discrimination under the Americans with Disabilities Act ("ADA") and FCRA due to be being "perceived as" disabled.

## II.   ANALYSIS

### A.   Requirement to Exhaust Administrative Remedies

To bring claims under Title VII, ADA, or FCRA, a plaintiff must exhaust administrative remedies by filing an administrative charge. See Gregory v. Ga. Dep't of Hum. Res., 355 F.3d 1277, 1278–80 (11th Cir. 2004). Judicial claims are limited by the scope of the underlying administrative charge. See Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018); Gregory, 355 F.3d at 1279–80. Even so, "the scope of an EEOC complaint should not be strictly interpreted," and courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [discrimination statutes]." Batson, 897 F.3d at 1327 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970)).[7] Accordingly, courts liberally construe charges, especially when prepared without the assistance of counsel. Batson, 897 F.3d at 1328 (citing Gregory, 355 F.3d at 1280).

"To determine whether a plaintiff has exhausted her administrative remedies . . . the 'proper inquiry' is whether the '[plaintiff's] complaint [is] like

---

[7] See Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981).

or related to, or grew out of, the allegations contained in [the] EEOC charge.'" Batson, 897 F.3d at 1328 (quoting Gregory, 355 F.3d at 1280) (alteration in original). In making this determination, courts typically consider the following: (i) types of discrimination identified ("is the box checked?"); (ii) types of discrimination described in charge particulars (regardless of legal label); and (iii) dates of discrimination. See generally Batson, 897 F.3d at 1328.

Another consideration is procedural status and ability to amend the charge. See Davis-Young v. Protective Life Corp., No. 2:12-cv-2851, 2014 WL 4264845, at *6–7 (N.D. Ala. Aug 21, 2014) (noting different considerations when the alleged retaliatory conduct arose after charge was filed); Butler v. Matsushita Commc'n Indus. Corp. of U.S.A., 203 F.R.D. 575, 581 (N.D. Ga. 2001) (citing Gupta v. E. Tex. State Univ., 654 F.2d. 411, 414 (5th Cir. 1981) (noting retaliation claims may be "found to be reasonably related if the retaliation is based on the filing of charge itself.")).

When "the alleged retaliatory action occurs before the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies as to that claim by including factual information in the charge that discloses the factual basis for the retaliation claim." Houston v. Army Fleet Servs., L.L.C., 509 F. Supp. 2d 1033, 1043–46 (M.D. Ala. 2007) (finding plaintiff's retaliation claim was barred for failure to exhaust administrative remedies because the allegedly retaliatory conduct occurred before the charge but was different than the facts

7

alleged in the charge); see also Thomas v. Mia. Dade Pub. Health Tr., 369 F. App'x 19, 22–23 (11th Cir. 2010) (affirming summary judgment because acts of retaliation that occurred "prior to the date of the EEOC charge that were not included in the charge were not exhausted and could not be considered by the district court"); Ramon v. AT&T Broadband, 195 F. App'x 860, 863, 866 (11th Cir. 2006) (affirming summary judgment for failure to exhaust administrative remedies as to retaliation claim even though termination was mentioned in charge because the retaliation box was not checked and the charge particulars did not support an inference of retaliation).

**B.    Retaliation Claims (Kim only)**

Determining whether a claim is reasonably related to or grows out of a charge is a fact intensive inquiry based on multiple factors. PGA argues Kim's retaliation claims, Counts III and VI, should be dismissed for failure to exhaust administrative remedies, and the Court agrees.[8]

Kim's charge contains no allegations reasonably related to a retaliation claim.[9] See Ramon, 195 F. App'x at 863, 866 ("No matter how leniently the

---

[8] To maintain the retaliation claim, Kim is essentially seeking two extensions of her charge. The first is to interpret the scope of the charge to include her termination. The second is to find the termination supports alleged retaliation.

[9] Cases involving alleged retaliation occurring after the charge was filed are factually distinct because Kim's charge was filed well after her termination. Cases cited by Kim generally support the proposition that the scope of an EEOC charge is not to be strictly interpreted. (See Doc. 17 at 3–4). Kim has not

8

Court reads [the] EEOC charge, [the plaintiff] alleged nothing related to [hostile work environment and retaliation] claims."). The charge was filed approximately nine months after Plaintiff was terminated, yet it does not indicate retaliation as a type of discrimination, does not mention termination, does not encompass the date of termination (the only date of discrimination is November 27, 2021, two days before the termination date), and does not describe any adverse employment action causally connected to protected activity as required for a retaliation claim.[10] See Little v. CSRA, Inc., 834 F. App'x 495, 498 (11th Cir. 2020) ("Although we can let judicial claims 'clarify' an EEOC charge, [the plaintiff's] allegations cannot clarify what is not in her EEOC charge.").[11]

Even liberally construed, Kim failed to include retaliation in the charge;

---

provided—and the Court has not found—any case allowing a judicial claim to proceed based on facts similar to those present here.

[10] While the failure to reference termination may have been an unintentional error, there is simply nothing in the charge to support a retaliation claim.

[11] Other courts have barred claims even when a box is checked but the alleged facts do not support the claim. See Chanda v. Englehard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (affirming retaliation claim based on complaint about national origin discrimination was barred even though plaintiff checked the retaliation box, because nothing in the charge mentioned discrimination based on national origin, a complaint about such discrimination, or a claim under Title VII); Spires v. Dynamic Sec., Inc., No. 3:14-CV-1976, 2014 WL 12746778, at *2 (N.D. Ala. Dec. 17, 2014) (quoting Sanchez, 431 F.2d at 462, for proposition that "selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged").

her retaliation claims—Counts III and VI—are dismissed with prejudice.

### C.     Failure to Accommodate Claims (Kim only)

PGA seeks to dismiss the portions of Count I and V that it characterizes as wrongful termination claims and does not seek to dismiss the portion of those counts that involve failure to accommodate. (Doc. 13 at 2 n.2, 6–7). The Court does not view Counts I and V as presenting separate wrongful termination claims and therefore denies PGA's Motion.

Nevertheless, there is no dispute that Kim did exhaust her administrative remedies regarding alleged religious discrimination based on failure to accommodate. Kim's termination is the logical outgrowth of the alleged failure to accommodate, and therefore the termination may be considered inextricably intertwined with the failure to accommodate and properly considered as part of Counts I and V.

### D.     Disparate Impact Claims (Kim and Nealis)

The disparate impact claims, Count II for both Kim and Nealis are dismissed with prejudice for failure to exhaust administrative remedies.[12]

A disparate impact claim is substantively different than a disparate treatment claim. See Lee v. Geo Secure Servs., LLC, No. 22-cv-60689, 2022 WL

---

[12] Because the Court finds Count II should be dismissed with prejudice, it is not necessary to address PGA's other arguments related to the disparate impact claims.

17740272, at *4–5 (S.D. Fla. Nov. 16, 2022), <u>report and recommendation adopted</u>, 2022 WL 17736219 (discussing differences between disparate treatment and disparate impact). Disparate treatment involves intentional mistreatment of an individual or a group. <u>Id.</u> Disparate impact involves application of a facially neutral policy that has a disproportionate impact on a protected group. <u>Id.</u>

For Kim, there are two related problems with the disparate impact claim. She has not mentioned disparate impact and her charge does not describe disparate impact. The charge describes disparate treatment—animus towards religious requests but not towards medical requests. <u>See</u> <u>Abdus-Shahid v. Mayor of Balt.</u>, 674 F. App'x 267, 275–76 (4th Cir. 2017) (affirming dismissal and noting the charge described disparate treatment and not disparate impact); <u>Pacheco v. Mineta</u>, 448 F.3d 783, 788–92 (5th Cir. 2006) (collecting cases assessing disparate impact claim and exhaustion requirements); <u>Camara v. Epps Air Serv. Inc.</u>, 292 F. Supp. 3d 1314, 1338 (N.D. Ga. 2017) (collecting cases involving only disparate treatment allegations in charge), <u>abrogated on other grounds by</u> <u>Groff v. DeJoy</u>, 600 U.S. 447 (2023). Moreover, Kim's charge mentions different treatment of work at home requests depending on whether the request was for a religious reason or a medical reason.[13] This, however, is

---

[13] Kim argues the "charge provided that employees requesting religious accommodations to work from home were denied while employees with medical

not a facially neutral rule, but instead describes improper application of the process to assess accommodation requests. <u>Jennings v. City of Tuscaloosa</u>, No. 7:13-cv-874, 2013 WL 5299304, at *3 (N.D. Ala. Sept. 19, 2013) (noting that arguing a policy is unfairly enforced is support for a disparate treatment claim and not a disparate impact claim).

For Nealis, the facts and arguments are similar. Nealis's charge does not contain any specific mention of disparate impact. It does state, "Complainant and other religious exempted employees were denied the same option to continue to work from home, demonstrating they were discriminated against due to their faith-based concerns . . . ." (Doc. 19-1). The charge describes disparate treatment of Nealis, and possibly others, but not disparate impact based on a facially neutral rule.

Accordingly, each Count II is dismissed with prejudice for failure to exhaust administrative remedies. <u>See</u> <u>Price v. M&H Valve Co.</u>, 177 F. App'x 1, 13–14 (11th Cir. 2006) (affirming summary judgment that resulted in barring the disparate impact claim for failure to exhaust administrative remedies because the disparate impact claim did not amplify, clarify, or grow out of the charge allegations).

---

accommodation requests . . . received preferential treatment." (Doc. 17 at 6). Kim's charge alleges only one example of a coworker denied a request to work from home for religious reasons and later granted a request to work from home for medical reasons.

### E.   "Perceived As" ADA Claims (Kim and Nealis)

The ADA has three definitions of a disability: (1) a physical or mental impairment that substantially limits one or more major life activities, (2) a record of such impairment, or (3) being perceived as having such an impairment. 42 U.S.C. § 12102(1). At issue here is the "perceived as" prong. Kim and Nealis allege they were perceived as disabled because they were unvaccinated and therefore considered "susceptible to Covid-19 and a Covid-19 transmitter." (Kim Doc. 1 ¶¶ 153–56, 177–80; Nealis Doc. 1 ¶¶ 184–87, 210–14). Both allege they were discriminated against and terminated based on being perceived as disabled. PGA argues the perceived as claims should be dismissed for failure to state a claim.[14]

Plaintiffs cannot state a disability claim based on perceived susceptibility to an illness. EEOC v. STME, LLC, 938 F.3d 1305, 1315 (11th Cir. 2019). "[A]n employee has a disability under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." Id. at 1314 (quotation marks omitted). The Eleventh Circuit has concluded the ADA

---

[14] PGA also argues the perceived as claims should be dismissed for failure to exhaust administrative remedies. While the Court is skeptical that Kim and Nealis have exhausted administrative remedies with regard to an ADA or related FCRA claim, the Court chooses to allow them an opportunity to amend if they are able to do so.   If either Kim or Nealis files an amended complaint to include the ADA and related FCRA claims, the Court will revisit the exhaustion issue at that time.

does not cover someone "who is presently healthy with only a potential to become ill" in the future. Id. at 1315. Other courts have reached the same conclusion. See, e.g., Shell v. Burlington N. Sante Fe Ry. Co., 941 F.3d 331, 336 (7th Cir. 2019) (noting all other circuits confronting the issue have agreed, citing decisions from Eighth, Ninth, Tenth, and Eleventh circuits). In reaching this conclusion, the Eleventh Circuit relied on the EEOC's own interpretative guidance, which states predisposition to an illness or disease is not a physical impairment. STME, 938 F.3d at 1316–17.

Courts applying this reasoning have rejected ADA claims based on being susceptible to Covid-19 or being unvaccinated. See Hice v. Mazella Lifting Tech., Inc., 589 F. Supp. 3d 539, 549–550 (E.D. Va. Mar. 4, 2022) (dismissing the perceived as claim because neither a risk factor for Covid-19 nor "possible future exposure to Covid-19" is covered by the ADA); Norris v. Honeywell, No. 8:22-cv-1675-CEH-TGW, 2023 WL 6256183, at *10–11 (M.D. Fla. Sept. 26, 2023) (discussing multiple cases alleging disability claims based on company's Covid-19 protocols); Schneider v. Cnty. of Fairfax, No. 1:22-cv-871, 2023 WL 2333305, at *4 (E.D. Va. Mar. 2, 2023); Librandi v. Alexion Pharma., Inc., No. 3:22-cv-1126, 2023 WL 3993741, at *5–7 (D. Conn. June 14, 2023). Accordingly, Counts IV and VII are dismissed without prejudice. While it seems unlikely that either Kim or Nealis can overcome this pleading deficiency, the Court will allow each to file an Amended Complaint as to these counts if there

is a good faith basis to do so.

Accordingly, it is hereby

**ORDERED:**

1.     In Kim (3:23-cv-441), Defendant PGA Tour's Motion to Dismiss (Doc. 13) is **GRANTED in part and DENIED in part** as follows:

    a.  Counts II, III, and VI are **dismissed with prejudice**;

    b.  Counts IV and VII are **dismissed without prejudice**; and

    c.  the motion is **denied** as to Counts I and V.

2.     In Nealis (3:23-cv-623), Defendant PGA Tour's Motion to Dismiss (Doc. 14) is **GRANTED** as follows:

    a.  Count II is **dismissed with prejudice**; and

    b.  Counts IV and VII are **dismissed without prejudice**.

3.     Plaintiffs Dayea Kim and Patrick Nealis may file an amended complaint no later than **February 23, 2024**.

4.     PGA shall respond to any amended complaint no later than **March 23, 2024**. If there is no amendment, PGA shall answer the remaining counts of both complaints no later than **March 23, 2024**.

5.     Except as described in this Order and the Order amending Kim's Case Management and Scheduling Order (Doc. 36), the deadlines in the Case Management and Scheduling Orders (Kim Doc. 24; Nealis Doc. 28) remain in effect.

**DONE AND ORDERED** in Jacksonville, Florida, the 25th day of January, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

ddw
Copies:

Counsel of record